## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CYNTHIA GOEBEL, individually as** ) | |
| **surviving spouse and heir-at-law of** ) | |
| **WAYNE GOEBEL, deceased, and as Next** ) | |
| **Friend on behalf** ) | |
| **of C.G., M.G., and A.G., minor surviving** ) | |
| **children and heirs-at-law of WAYNE GOEBEL,** ) | |
| **deceased, and as the Special Administrator of** ) | |
| **the ESTATE OF WAYNE GOEBEL, deceased,** ) | |
| **and MICHAEL GOEBEL and REBECCA** ) | |
| **GOEBEL, surviving adult children and** ) | |
| **heirs-at-law of WAYNE GOEBEL, deceased** ) | |
| ) | |
| **Plaintiffs,** ) | **Case No. _____** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA, acting** ) | |
| **through and herein for the DEPARTMENT** ) | |
| **OF HEALTH AND HUMAN SERVICES,** ) | |
| **And COMMUNITY HEALTH CENTER OF** ) | |
| **SOUTHEAST KANSAS d/b/a FORT SCOTT** ) | |
| **WALK-IN CARE, FORT SCOTT MAIN,** ) | |
| **AND PLEASANTON** ) | |
| **Serving:** ) | |
| ) | |
| **Duston Slinkard** ) | |
| **United States Attorney for the District of Kansas** ) | |
| **1200 Epic Center** ) | |
| **301 N. Main Street** ) | |
| **Wichita, KS  67207** ) | |
| ) | |
| **Xavier Becerra** ) | |
| **Secretary of Health and Human Services** ) | |
| **U.S. Department of Health and Human Services** ) | |
| **200 Independence Ave., SW** ) | |
| **Washington D.C.  20201** ) | |
| ) | |
| **BRADLEY P. YOUNG, APRN** ) | |
| **Serving personally at:** ) | |
| **367 HWY 69** ) | |
| **Garland, KS  66741** ) | |
| ) | |
| **PADEN SHAFFER, APRN** ) | |

**Serving personally at:** )
**3011 N. Michigan** )
**Pittsburg, KS 66762** )
)
**LINDA BEAN, D.O.** )
**Serving personally at:** )
**3011 N. Michigan** )
**Pittsburg, KS 66762** )
)
**ASCENSION VIA CHRISTI HOSPITAL** )
**PITTSBURG, INC.** )
**Serving Registered Agent:** )
**Corporation Service Company** )
**2900 SW Wanamaker Drive, Suite 204** )
**Topeka, KS  66614** )
)
**MINDI GARNER, D.O.** )
**Personally serving at:** )
**1 Mount Carmel Way** )
**Pittsburg, KS 66762** )
)
**BASHIR MARJI, M.D.** )
**Personally serving at:** )
**1 Mount Carmel Way** )
**Pittsburg, KS 66762** )
)
**ALI HAMMAD, M.D.** )
**Personally serving at:** )
**1 Mount Carmel Way** )
**Pittsburg, KS 66762** )
)
**HEATHER BAIMA, APRN** )
**Personally serving at:** )
**1 Mount Carmel Way** )
**Pittsburg, KS 66762** )
)
**and** )
)
**KIERAN NICHOLSON, M.D.** )
**Personally serving at:** )
**7803 Drew Ave.** )
**Burr Ridge, IL  60527** )
)
                    **Defendants.** )

**COMPLAINT**

**COME NOW** the plaintiffs, Cynthia Goebel, individually as surviving spouse and heir-at-law of Wayne Goebel, deceased. and on behalf of C.G., M.G., A.G., minor surviving children and heirs-at-law of Wayne Goebel, deceased, and as the Special Administrator for the Estate of Wayne Goebel, deceased, and Michael Goebel and Rebecca Goebel, adult surviving children and heirs-at-law of Wayne Goebel, deceased, and for their cause of action against Defendants, allege and state the following:

**PARTIES**

1.     Plaintiff Cynthia Goebel is and was the surviving spouse and heir-at-law of Decedent Wayne Goebel. Plaintiff Cynthia Goebel is a citizen of the United States and the State of Kansas, residing on Bourbon County, Kansas at 401 W. 23rd Street, Fort Scott, Kansas 66701. Plaintiff Cynthia Goebel is a proper party to bring this suit for the wrongful death of Decedent Wayne Goebel pursuant to K.S.A. 60-1901 *et seq.*

2.     Plaintiff Michael Goebel is an adult surviving child and heir-at-law of Decedent Wayne Goebel. Plaintiff Michael Goebel is a citizen of the United States and the State of Kansas, residing in Bourbon County, Kansas, at 401 W. 23rd Street, Fort Scott, Kansas 66701.  Plaintiff Michael Goebel is a proper party to bring this suit for the wrongful death of Wayne Goebel pursuant to K.S.A. 60-1901 *et seq.*

3.     Plaintiff Rebecca Goebel is an adult surviving child and heir-at-law of Decedent Wayne Goebel. Plaintiff Rebecca Goebel is a citizen of the United States and the State of Kansas, residing in Bourbon County, Kansas, at 401 W. 23rd Street, Fort Scott, Kansas 66701. Plaintiff Rebecca Goebel is a proper party to bring this suit for the wrongful death of Wayne Goebel pursuant to K.S.A. 60-1901 *et seq.*

4.      C.G., M.G., and A.G., are minor children and heirs-at-law of Decedent Wayne Goebel. C.G., M.G., and A.G., are citizens of the United States and State of Kansas, residing in Bourbon County, Kansas, at 401 W. 23rd Street, Fort Scott, Kansas 66701.  Plaintiff Cyntha Goebel as the natural mother and Next Friend of C.G., M.G., and A.G.,  brings this suit on their behalf for the wrongful death of Wayne Goebel pursuant to K.S.A. 16-1901 *et seq.*  There are no other heirs of Wayne Goebel.

5.      Plaintiff Cynthia Goebel was appointed Special Administrator of the Estate of Wayne Goebel, deceased, in Bourbon County, on July 12, 2021, Case No. BB-2021-PR-000036.

6.      Plaintiff Cynthia Goebel as Special Administrator of the Estate of Wayne Goebel, deceased, brings this survival action on behalf of the Estate of Wayne Goebel, pursuant to K.S.A. 60-1801.

7.      Wayne Goebel, deceased, was at the time of his death a citizen of the United States and the State of Kansas, Bourbon County, Kansas, at 401 W. 23rd Street, Fort Scott, Kansas 66701.

8.      At all times relevant, Community Health Center of Southeast Kansas, Inc. (CHC/SEK), d/b/a Fort Scott Walk-In Care, Fort Scott Main and Pleasanton, was a health center receiving funds from the U.S. Department of Health & Human Services (HHS) and had deemed Federal Public Health Service (PHS) status with respect to certain health and health-related claims, including medical malpractice claims, for CHC/SEK and CHC/SEK's covered individuals.

9.      Plaintiffs have exhausted their administrative remedies and the Court has subject matter jurisdiction over Plaintiffs' claims herein pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b). Pursuant to the requirements of 28 U.S.C. § 2675(a), Plaintiffs filed an

administrative claim on Standard Form 95 relating to the care of Wayne Goebel received at Community Health Center of Southeast Kansas, d/b/a Fort Scott Walk-In Care, Fort Scott, and Pleasanton by sending a Form 95 by certified mail to U.S. Department of Health and Human Services, Office of the General Counsel, General Law Division, Claims and Employment Law Branch, 330 C Street, SW, Switzer Building, Suite 2600, Washington, D.C. 20201 on June 8, 2022. The Department of Health and Human Services acknowledged receipt of the claim in a letter dated June 13, 2022. The Department of Health and Human Services has not made a final disposition of the claim after more than six months have elapsed since it acknowledged receipt of plaintiff's Form 95 notice. Plaintiff has thus met all requirements precedent for filing suit under the Federal Tort Claims Act.

10.     Defendant, United States of America, may be served with process by serving Duston Slinkard, United States Attorney for the District of Kansas, 1200 Epic Center, 301 N. Main Street, Wichita, KS 67207 and by serving Xavier Becerra, Secretary of Health and Human Services, U.S. Department of Health and Human Services, 200 Independence Avenue, SW, Washington, DC 20201.

11.     Defendant Bradley P. Young, APRN, (hereinafter "Defendant Young") is a nurse practitioner, who at all relevant times was licensed to practice in the State of Kansas, and was practicing at CHC/SEK, and he may be personally served at 367 HWY 69, Garland, Kansas 66741.

12.     Defendant Paden Shaffer, APRN, (hereinafter "Defendant Shaffer") is a nurse practitioner, who at all relevant times was licensed to practice in the State of Kansas, and was practicing at CHC/SEK, and he may be personally served at 3011 N. Michigan, Pittsburg, Kansas 66762.

13.     Defendant Linda Bean, D.O., (hereinafter "Defendant Bean"), is a physician who at all relevant times was a physician licensed to practice medicine in the State of Kansas, and was practicing at CHC/SEK, and she may be personally served at 3011 N. Michigan, Pittsburg, Kansas 66762.

14.     At all material times, healthcare providers,  nursing and other staff at CHC/SEK were acting as employees, agents and/or servants of CHC/SEK and Defendant USA such that Defendant USA is legally liable and responsible for their negligent acts as stated below.

15.     Defendant Ascension Via Christi Hospital Pittsburg, Inc. (hereinafter "Defendant Via Christi Pittsburg"), was and is a corporation organized and existing under the laws of the State of Kansas, and continues to conduct business in Crawford County, Kansas.  At all relevant times, Defendant Via Christi Pittsburg was engaged in whole or in part in the business of operating a hospital, medical center and/or medical facility at 1 Mount Carmel Way, Pittsburg, Kansas 66762, which provided health care good and services to members of the general public, including to Decedent Wayne Goebel, and may be served through their registered agent, Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, Kansas 66614.

16.     At all material times, the nursing and other staff at Defendant Via Christi Pittsburg were acting as employees, agents and/or servants of Defendant Via Christi Pittsburg such that Defendant Via Christi Pittsburg is legally liable and responsible for their negligent acts as stated below.

17.     Defendant Mindi Garner, D.O., (hereinafter "Defendant Garner") is a physician who at all relevant times was licensed to practice medicine in the State of Kansas, and was practicing at Defendant Via Christi Pittsburg, providing medical care and treatment to Decedent Wayne Goebel, and she may be served at 1 Mount Carmel Way, Pittsburg, Kansas 66762.

18.     Defendant Bashir Marji, M.D., (hereinafter "Defendant Marji") is a physician who at all relevant times was licensed to practice medicine in the State of Kansas, and was practicing at Defendant Via Christi Pittsburg, providing medical care and treatment to Decedent Wayne Goebel, and he may be served at 1 Mount Carmel Way, Pittsburg, Kansas 66762.

19.     Defendant Ali Hammad, M.D., (hereinafter "Defendant Hammad") is a physician who at all relevant times was licensed to practice medicine in the State of Kansas, and was practicing at Defendant Via Christi Pittsburg, providing medical care and treatment to Decedent Wayne Goebel, and he may be served at 1 Mount Carmel Way, Pittsburg, Kansas 66762.

20.     Defendant Heather Baima, APRN, (hereinafter "Defendant Baima") is a nurse practitioner who all relevant times was licensed in the State of Kansas, and was practicing at Defendant Via Christi Pittsburg, providing medical care and treatment to Decedent Wayne Goebel, and she may be served at 1 Mount Carmel Way, Pittsburg, Kansas 66762.

21.     Defendant Kieran Nicholson, M.D., (hereinafter "Defendant Nicholson") is physician who at all relevant times was licensed to practice medicine in the State of Kansas, and was practicing for Defendant Via Christi Pittsburg, providing medical care and treatment to Decedent Wayne Goebel, and he may be served at 7803 Drew Ave., Burr Ridge, Illinois 60527.

## JURIDICTION AND VENUE

22.     This Court has original exclusive jurisdiction under the Federal Tort Claims Act pursuant to 28 U.S.C. § 1346(b), 2401(b), 2671-2680.

23.     Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(e), as the United States is a defendant and the events giving rise to the claim occurred in this district.

24.    This Court has jurisdiction over Defendants Via Christi Pittsburg, Garner, Marji, Hammad, Baima, and Nicholson on the basis of Pendent Jurisdiction.

## FACTS

25.    On April 23, 2021, Decedent Wayne Goebel presented to Nurse Practitioner Mayra Watson at CHC/SEK, Fort Scott Walk-In Care, with cough, congestion, vomiting, and cold sweats.  Decedent weighed 175 pounds. He had a heart rate of 90 beats per minute (bpm), a respiratory rate of 18 breaths per minute and an oxygen saturation of 99%.

26.    Decedent Wayne Goebel's strep test was positive.  Ms. Watson prescribed amoxicillin 1000 mg once a day for 10 days.

27.    On April 24, 2021, Decedent Wayne Goebel presented to Defendant Nurse Practitioner Bradley Young at CHC/SEK, Fort Scott Walk-In Care, with shortness of breath and chills.  Decedent weighed 175 pounds. He had a heart rate of 132 bpm, a respiratory rate of 20 breaths per minute, and an oxygen saturation of 90%. Defendant Young documented that Decedent had rales in the right lower lung, and that the left lower lobe had diminished breath sounds.

28.    Defendant Young gave Decedent Wayne Goebel an albuterol nebulizer and performed a chest x-ray which Defendant Young interpreted as abnormal. Decedent's repeat heart rate was 136 bpm and his oxygen saturation was 95%.  Defendant Young diagnosed Decedent with right lower lobe pneumonia prescribing Augmentin, Azithromycin and an albuterol inhaler. Decedent continued with tachycardia with a physical exam and x-ray consistent with signs of heart failure. Defendant Young did not do an ECG on Decedent nor refer Decedent to an emergency department for further evaluation and treatment.

29.     On April 26, 2021, Decedent Wayne Goebel's chest x-ray resulted showing "Bilateral interstitial pulmonary opacities consistent with atypical infection or interstitial pulmonary edema with small bilateral pleural effusions."  Decedent's chest x-ray was consistent with congestion heart failure. On April 26, 2021, Defendant Young did not do an ECG on Decedent nor refer Decedent to an emergency department for further evaluation and treatment.

30.     On April 29, 2021, Decedent Wayne Goebel returned to see Defendant Young at CHC/SEK, Pleasanton, with shortness of breath on exertion.  Decedent weighed 199 pounds; 24 pounds more than he weighed on April 24, 2021.   His heart rate was 80 bpm, and his oxygen saturation was 97%. There was no documentation of Decedent's respiratory rate.

31.     Defendant Young ordered a B-type natriuretic peptide (BNP) and gave a nebulizer treatment and an intramuscular shot of antibiotic.  Decedent's repeat heart rate was 102 bpm and his oxygen saturation was 94%.  Defendant Young diagnosed Decedent Wayne Goebel with bilateral interstitial pneumonia.  Decedent continued with signs of heart failure. Defendant Young did not do an ECG on Decedent nor refer Decedent to the emergency department for further evaluation and treatment.

32.     On April 30, 2021, at 12:40 p.m., Decedent Wayne Goebel's BNP resulted at 455, with normal being less than 100. An elevated BNP is a sign of heart failure. Decedent was not notified that his BNP was elevated, nor was he referred to an emergency department for further evaluation and treatment.

33.     On April 30, 2021, Decedent Wayne Goebel returned to CHC/SEK at 1:04 p.m., for an intramuscular injection of antibiotic.   Amber Reinecke administered the medication.  Ms. Reinecke did not notify Decedent that his BNP was elevated, nor did she refer him to an emergency department for further evaluation and treatment.

34.     On May 1, 2021, at 7:52 a.m., Decedent Wayne Goebel returned to follow-up with Defendant Young at CHC/SEK, Pleasanton.  Decedent weighed 199 pounds, up 24 pounds from his weight on April 24, 2021. Defendant Young diagnosed Decedent with bilateral interstitial pneumonia. Decedent received another intramuscular injection of antibiotic, a prescription for Prednisone and a referral to Defendant Paden Shaffer, APRN, pulmonology at CHC/SEK, Fort Scott.

35.     During this evaluation, Defendant Young did not acknowledge Decedent's elevated BNP, nor notify Decedent of his elevated BNP. Decedent continued with signs and symptoms of congestive heart failure.  Defendant Young did not do an ECG on Decedent nor refer Decedent to an emergency department for further evaluation and treatment.

36.     On May 1, 2021, at 5:18 p.m., Defendant Young documented "Pt is treated for pneumonia. Tell him I discussed his case with Dr. Bean. Concern of pulmonary edema with BNP 455, Potassium and chloride are low. BS elevated (292) and most likely will go higher with Prednisone, though I feel he needs it. Needs to eat at a high protein, low sugar/ carb diet. Have him see me Monday or Tues. If symptoms worsen, he needs to go to the ER. In the meantime, Lasix 40 mg daily x 5 days. Add K-dur 40 meq bid x 3 days, then 40 meq daily x7 days. Will be aggressive with potassium replacement at it could potentially go lower with Lasix. Will re-evaluate with labs in a few days."  Defendants Young and Bean began treating Decedent for congestive heart failure. Defendants Young and Bean did not refer Decedent to an emergency department for further evaluation and treatment.

37.     On May 1, 2021, at 6:04 p.m., CHC/SEK nurse Colleen Pellett documented, "medications ordered and sent to Walmart. Explained some fluid on lungs, if sx or feel any

worse need to go to ER, otherwise follow with Brad Monday or Tuesday. Lasix and K+ sent to Walmart."

38.     On May 5, 2021, Decedent Wayne Goebel presented to Defendant Shaffer at CHC/SEK in Fort Scott with shortness of breath, labored breathing and bilateral leg swelling for three weeks. Decedent informed Defendant Shaffer he had "water around his heart." Decedent weighed 199 pounds, up 24 pounds from his weight on April 24, 2021. Decedent heart rate was 93 bpm.  There is no documented respiratory rate.

39.     Defendant Shaffer reviewed Decedent Wayne Goebel's chest x-ray, documenting, "reviewed CXR 4/24. question CHF w/ fluid overload vs less likely overlap or involvement of acute infiltrate/pna. probable pulm edema. obtain repeat cxr given has had some diuresis."

40.     Defendant Shaffer ordered and reviewed a chest x-ray during this May 5, 2021, visit, documenting "interval increase in bilat pulm edema/infiltrates w / small bilat pleural effusions."

41.     Defendant Shaffer acknowledged the elevated BNP of 455, a sign of congestive heart failure.

42.     Defendant Shaffer treated Decedent's congestive heart failure by increasing Decedent's Lasix and continued the medications prescribed by Defendant Young. Defendant Shaffer ordered a chest CT scan and an ECHO "stat," and made a referral to cardiology.

43.     Defendant Shaffer did not do an ECG nor did he refer Decedent to an emergency department for evaluation and treatment.

44.     Decedent Wayne Goebel's "stat" ECHO ordered on May 5, 2021, was performed on May 7, 2021, at 10:01 a.m., at Defendant Via Christi Pittsburg.  The report was amended and electronically signed by Defendant Marji on May 7, 2021, at 11:52 a.m., showing the following:

(1)Severely reduced left ventricular systolic function; (2) Moderate diffuse hypokinesis; (3) Akinesis of the apical myocardium; (4) Apical thrombus; (5) Akinesis of the apical anterior, apical inferior, apical septal, apical lateral and apical myocardium; (6) Mitral valve moderate regurgitation; (7) Tricuspid valve moderate regurgitation; and (8) Pulmonary artery systolic pressures of 55 to 60 mm Hg.

45.     Decedent Wayne Goebel's "stat" chest CT scan ordered on May 5, 2021, was performed on May 7, 2021, at 10:30 a.m., at Defendant Via Christi Pittsburg.  The report was called and faxed to "Abbie/Paden Shaffer" at 12:03 p.m., showing moderate-sized pleural effusions with moderate severe pulmonary edema, and dilated left ventricle with an arterial aneurysm at the apex with a 2.0 by 1.5 cm thrombus in the apex.

46.     The technician, who performed Decedent Wayne Goebel's tests at Defendant Via Christi Pittsburg, spoke with a cardiologist and told Decedent to go see his doctor, Defendant Paden Shaffer, at CHC/SEK, Fort Scott, immediately.

47.     Decedent Wayne Goebel drove back to CHC/SEK at Fort Scott.  While he was waiting in the reception area, Defendant Shaffer called Decedent Wayne Goebel, and told him to go back to Defendant Ascension Via Christi in Pittsburg, Kansas, where he would be directly admitted to the intensive care unit (ICU).

48.     At 12:24 p.m., Defendant Garner entered an order for Decedent Wayne Goebel to be a direct admission to the Cardiac Stepdown Unit, with a diagnosis of congestive heart failure.

49.     At 12:24 p.m., Defendant Garner entered an order for an EKG. The priority was considered "routine."  In the order it is noted that the RN must page the EKG technician in order for the exam to be done.

50.     Decedent Wayne Goebel drove back to Defendant Ascension Via Christi in Pittsburg, Kansas.  Decedent went to admitting, where he filled out paperwork.  After filling out paperwork, Decedent was told to walk to the intensive care unit. Decedent was so short of breath, he asked a hospital employee walking down the hall to get him a wheelchair.

51.     On arrival to the ICU, the nurse placed Decedent Wayne Goebel in a room, explaining the bed controls and the video camera that was connected to a monitoring station in Chicago.  A rhythm strip at 1:22 p.m. showed heart rate of 131 bpm with a rhythm strip suggestive of ST elevation, a sign of myocardial infarction. Decedent had a respiratory rate of 34 breaths per minute and a blood pressure of 150/101.

52.     At 1:53 p.m., Defendant Nicholson, a telehealth intensive care physician for Defendant Via Christi Pittsburg documented that Decedent Wayne Goebel was admitted with congestive heart failure and the emergency department report is unavailable. Decedent was not seen in the emergency department. Defendant Nicholson documented that Decedent was "comfortable, talking with RN 115 nsr 124/74 97% on 2L. Interventions Intermediate-Respiratory distress – evaluation and management."

53.     At 2:00 p.m., Defendant Baima began performing and history and physical of Decedent Wayne Goebel, as a cardiology consultant.  Defendant Baima's supervising attending cardiologist was Defendant Hammad.   Defendant Baima documented the reason for the consult was progressive dyspnea, congestive heart failure and an apical thrombus.  Defendant Baima documented that Decedent had shortness of breath with conversation.  At this time Decedent's heart rate was 117 bpm with a respiratory rate of 43 and a blood pressure of 132/103.

54.     At 2:15 p.m., Decedent Wayne Goebel's heart rate was 124 bpm, with a respiratory rate of 42 and a blood pressure of 139/108.

55.     At 2:30 p.m., Decedent Wayne Goebel's heart rate was 122 bpm, with a respiratory rate of 32, and a blood pressure of 129/100.

56.     At 2:45 p.m., Decedent Wayne Goebel's heart rate was 123 bpm, with a respiratory rate of 40, and blood pressure of 137/113.

57.     At 3:00 p.m., Decedent Wayne Goebel's heart rate was 140 bpm, with a respiratory rate of 60, and a blood pressure of 177/145.

58.     At 3:08 p.m., Decedent Wayne Goebel went into ventricular fibrillation (v-fib). Resuscitation was attempted but Decedent remained in v-fib, and the time of death was called at 3:40 p.m.

59.     Defendant Garner did not evaluate Decedent Wayne Goebel until after he went into v-fib.

60.     Defendant Ali Hammad documented that Decedent Wayne Goebel expired before Defendant Hammad could evaluate Decedent.

## COUNT I
### *Negligence of Defendants USA, Young, Bean and Shaffer*

COME NOW Plaintiffs for Count I of this Petition for Damages against Defendants USA, Young, Bean and Shaffer, state and allege as follows:

61.     Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

62.     At the time of the negligent acts complained of herein and at all times mentioned Defendants USA, Young, Bean and Shaffer had a duty to possess and use the degree of skill, experience, training, education and learning care as a reasonable prudent and care healthcare

provider would have ordinarily used in the same or similar circumstances by members of their profession in the care and treatment of Decedent Wayne Goebel.

63.     The Defendants USA, Young, Shaffer, Bean, and other employees of CHC-SEK which operates under the Department of Health & Human Services of the United States Government, failed to use that degree of skill, learning and judgement ordinarily used under the same or similar circumstances by members of their profession in that Defendants were negligent in the following ways:

a.   Failing to recognize Decedent Wayne Goebel was suffering from new onset congestive heart failure and/or acute coronary artery syndrome;

b.   Failing to evaluate Decedent Wayne Goebel for new onset congestive heart failure and/or acute coronary artery syndrome;

c.   Failing to timely treat Decedent Wayne Goebel for new onset congestive heart failure and/or acute coronary artery syndrome;

d.   Failing to timely refer Decedent Wayne Goebel for evaluation  of new onset congestive heart failure and/or acute coronary artery syndrome;

e.   Failing to recognize that tachycardia, hypoxia, shortness of breath and weight gain as signs of new onset congestive heart failure and/or acute coronary artery syndrome;

f.   Failing to act accordingly when Decedent Wayne Goebel's chest x-rays were consistent with new onset congestive heart failure;

g.   Failing to act accordingly when Decedent Wayne Goebel's history and physical exam were consistent with new onset congestive heart failure and/or acute coronary artery syndrome;

h.  Failing to act accordingly when Decedent Wayne Goebel's BNP was elevated, a laboratory value elevated in congestive heart failure;

i.  Failing to do an EKG; and

j.  Failing to act accordingly when Decedent Wayne Goebel's ECHO should signs that he had suffered a large myocardial infarction.

64.  Defendants USA's, Young's, Bean's and Shaffer's medical negligence in failing to timely consider, diagnose and treat Decedent Wayne Goebel's new onset congestive heart failure and/or acute coronary artery syndrome caused or contributed to cause the death of Wayne Goebel on May 7, 2021.

65.  As the direct and proximate result of the negligence of Defendants USA, Young, Bean and Shaffer, pursuant to K.S.A. 60-1901 et seq., the applicable statute for wrongful death under Kansas law, Plaintiffs and the other heirs-at-law of Wayne Goebel have suffered pecuniary and non-pecuniary losses, harms and damages, including, but not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of services, loss of comfort, loss of training, loss of education, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of financial support, and funeral expenses.

66.  The death of Wayne Goebel on May 7, 2021, and the resulting pecuniary and non-pecuniary damages sustained by Plaintiffs and all surviving children and heirs-at-law were directly and proximately caused by the medical negligence and carelessness of Defendants USA, Young, Bean and Shaffer.

67.  As a direct and proximate result of the negligence of Defendants USA, Young, Bean and Shaffer, Decedent Wayne Goebel sustained damages for conscious pain and suffering between the time of injury and death; loss of enjoyment of life, mental distress, emotional

anguish, the untimely loss of his life, loss of earnings, medical and other related expenses pursuant to K.S.A. 60-1801, et. seq.

68.     Plaintiffs' noneconomic damages in this common law medical negligence cause of action are not limited by K.S.A. Sec. 60-19a02, which the Supreme Court of Kansas has abrogated and ruled facially unconstitutional as violating § 5 and § 18 of the Kansas Constitution in *Hilburn v. Enerpipe, Ltd.*, 442 P.3d 509 (Kan. 2019).

WHEREFORE, Plaintiffs pray for judgment against Defendants USA, Young, Bean and Shaffer, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with the costs of this action, interest and such other relief as Plaintiffs are entitled under Kansas law and that the Court may deem just and appropriate.

## COUNT II
### *Negligence of Defendant Via Christi Pittsburg*

COME NOW Plaintiffs for Count II of this Petition for Damages against Defendant Via Christi Pittsburg, state and allege as follows:

1.     Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

2.     At all relevant times, the healthcare providers and hospital staff at Defendant Via Christi Pittsburg had a duty to possess and use the degree of skill, experience, training, education and learning care as a reasonable prudent and care healthcare provider and hospital staff would have ordinarily used in the same or similar circumstances by members of their profession in the care and treatment of Decedent Wayne Goebel.

3.     The Defendant Via Christi Pittsburg failed to use that degree of skill, learning and judgement ordinarily used under the same or similar circumstances by members of their profession in that Defendants were negligent in the following ways:

a. Failing to refer Decedent Wayne Goebel to the emergency department after an ECHO and chest CT showed signs he had suffered a myocardial infarction and had a thrombus in his heart;

b. Failing to recognize Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

c. Failing to communicate Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

d. Failing to treat Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

e. Failing to do an ECG;

f. Failing to recognize that Decedent Wayne Goebel had new onset congestive heart failure and/or acute coronary artery syndrome;

g. Failing to evaluate Decedent Wayne Goebel for new onset congestive heart failure and/or acute coronary artery syndrome; and

h. Failing to treat Decedent Wayne Goebel appropriately for new onset congestive heart failure and/or acute coronary artery syndrome.

4. Defendant Via Christi Pittsburg's medical negligence in failing to timely consider, diagnose and treat Decedent Wayne Goebel's new onset congestive heart failure and/or acute coronary artery syndrome caused or contributed to cause the death of Wayne Goebel on May 7, 2021.

5. As the direct and proximate result of the negligence of Defendant Via Christi, pursuant to K.S.A. 60-1901 et seq., the applicable statute for wrongful death under Kansas law, Plaintiffs and the other heirs-at-law of Wayne Goebel have suffered pecuniary and non-pecuniary losses, harms and damages, including, but not limited to, mental anguish, suffering,

bereavement, loss of society, loss of companionship, loss of services, loss of comfort, loss of training, loss of education, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of financial support, and funeral expenses.

6.      The death of Wayne Goebel on May 7, 2021, and the resulting pecuniary and non-pecuniary damages sustained by Plaintiffs and all surviving children and heirs-at-law were directly and proximately caused by the medical negligence and carelessness of Defendant Via Christi Pittsburg.

7.      As a direct and proximate result of the negligence of Defendant Via Christi Pittsburg, Decedent Wayne Goebel sustained damages for conscious pain and suffering between the time of injury and death; loss of enjoyment of life, mental distress, emotional anguish, the untimely loss of his life, loss of earnings, medical and other related expenses pursuant to K.S.A. 60-1801, et. seq.

8.      Plaintiffs' noneconomic damages in this common law medical negligence cause of action are not limited by K.S.A. Sec. 60-19a02, which the Supreme Court of Kansas has abrogated and ruled facially unconstitutional as violating § 5 and § 18 of the Kansas Constitution in *Hilburn v. Enerpipe, Ltd.*, 442 P.3d 509 (Kan. 2019).

WHEREFORE, Plaintiffs pray for judgment against Defendant Via Christi, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with the costs of this action, interest and such other relief as Plaintiffs are entitled under Kansas law and that the Court may deem just and appropriate.

## COUNT III
### Negligence of Defendants Garner, Marji, Hammad, Baima, and Nicholson

COME NOW Plaintiffs for Count III of this Petition for Damages against Defendants Garner, Marji, Hammad, Baima and Nicholson, state and allege as follows:

9.      Plaintiffs hereby incorporate each of the preceding paragraphs as though fully set forth herein.

10.     At the time of the negligent acts complained of herein and at all times mentioned Defendants Garner, Marji, Hammad, Baima and Nicholson had a duty to possess and use the degree of skill, experience, training, education and learning care as a reasonable prudent and care healthcare provider would have ordinarily used in the same or similar circumstances by members of their profession in the care and treatment of Decedent Wayne Goebel.

11.     The Defendants Garner, Marji, Hammad, Baima and Nicholson failed to use that degree of skill, learning and judgement ordinarily used under the same or similar circumstances by members of their profession in that Defendants were negligent in the following ways:

a.  Failing to refer Decedent Wayne Goebel to the emergency department after an ECHO and chest CT showed signs he had suffered a myocardial infarction and had a thrombus in his heart;

b.  Failing to recognize Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

c.  Failing to communicate Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

d.  Failing to treat Decedent Wayne Goebel's abnormal vital signs and rhythm strip;

e.  Failing to do an ECG;

f.  Failing to recognize that Decedent Wayne Goebel had new onset congestive heart failure and/or acute coronary artery syndrome;

g.  Failing to properly evaluate Decedent Wayne Goebel for new onset congestive heart failure and/or acute coronary artery syndrome; and

h.   Failing to properly treat Decedent Wayne Goebel appropriately for new onset congestive heart failure and/or acute coronary artery syndrome.

12.   Defendants Garner's, Marji's, Hammad's, Baima's and Nicholson's medical negligence in failing to timely consider, diagnose and treat Decedent Wayne Goebel's new onset congestive heart failure and/or acute coronary artery syndrome caused or contributed to cause the death of Wayne Goebel on May 7, 2021.

13.   As the direct and proximate result of the negligence of Defendants Garner, Marji, Hammad, Baima and Nicholson pursuant to K.S.A. 60-1901 et seq., the applicable statute for wrongful death under Kansas law, Plaintiffs and the other heirs-at-law of Wayne Goebel have suffered pecuniary and non-pecuniary losses, harms and damages, including, but not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of services, loss of comfort, loss of training, loss of education, loss of protection, loss of care, loss of attention, loss of advice, loss of counsel, loss of financial support, and funeral expenses.

14.   The death of Wayne Goebel on May 7, 2021, and the resulting pecuniary and non-pecuniary damages sustained by Plaintiffs and all surviving children and heirs-at-law were directly and proximately caused by the medical negligence and carelessness of Defendants Garner, Marji, Hammad, Baima and Nicholson.

15.   As a direct and proximate result of the negligence of Defendant Garner, Marji, Hammad, Baima and Nicholson, Decedent Wayne Goebel sustained damages for conscious pain and suffering between the time of injury and death; loss of enjoyment of life, mental distress, emotional anguish, the untimely loss of his life, loss of earnings, medical and other related expenses pursuant to K.S.A. 60-1801, et. seq.

16.     Plaintiffs' noneconomic damages in this common law medical negligence cause of action are not limited by K.S.A. Sec. 60-19a02, which the Supreme Court of Kansas has abrogated and ruled facially unconstitutional as violating § 5 and § 18 of the Kansas Constitution in *Hilburn v. Enerpipe, Ltd.*, 442 P.3d 509 (Kan. 2019).

WHEREFORE, Plaintiffs pray for judgment against Defendants Garner, Marji, Hammad, Baima and Nicholson, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with the costs of this action, interest and such other relief as Plaintiffs are entitled under Kansas law and that the Court may deem just and appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all issues raised here in.

## DESIGNATION OF PLACE OF TRIAL TO BE FILED CONTEMPORANEOUSLY

Pursuant to D. Kan. Local R. 40.2, Plaintiffs will file a Designation of Place of Trial contemporaneous to the filing of this Complaint.

Respectfully submitted,

/s/Leland F. Dempsey
LELAND F. DEMPSEY KS #22410
DIANE M. PLANTZ KS #28535
Dempsey, Kingsland & Osteen, P.C.
City Center Square
1100 Main St., Suite 1860
Kansas City, MO 64105
(816) 421-6868; Fax (816) 421-2610
ATTORNEYS FOR PLAINTIFFS